Priority
Send
Enter
Closed
JS-5/JS-6 ——
JS-2/JS-3 ——
Scan Only——



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON L. SIMMONS, JR., | Case No. EDCV 04-00468-JTL |
| Plaintiff, | |
| | MEMORANDUM OPINION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

## PROCEEDINGS

On April 19, 2004, Vernon L. Simmons, Jr. ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of plaintiff's application for social security disability and supplemental security income benefits. On June 2, 2004, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on November 10, 2004, defendant filed an Answer to Complaint. On February 1, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

1

**BACKGROUND**

2    On June 1, 2001, plaintiff filed an application for social
3  security disability and supplemental security income benefits.
4  (Administrative Record ["AR"] at 246).   Plaintiff alleged that
5  beginning on January 1, 2000, he was unable to work because he
6  suffered from seizures and hypertension.   (AR at 68, 250).   The
7  Commissioner denied plaintiff's application for benefits both
8  initially and on review.  (AR at 250-53, 256-59).

9    Thereafter, plaintiff requested a hearing before an
10 Administrative Law Judge ("ALJ").  (AR at 260). On May 20, 2003, the
11 ALJ conducted a hearing in San Bernardino, California.  (AR at 261-
12 321).   Plaintiff appeared at the hearing with his counsel and
13 testified.  (AR at 263-310).

14    On September 15, 2003, the ALJ issued his decision denying
15 benefits.  (AR at 12-23).  In his decision, the ALJ concluded that
16 plaintiff suffered from the following severe impairments:   complex
17 partial seizure disorder, hypertension, and headaches. (AR at 15-16).
18 According to the ALJ, however, these impairments, alone or in
19 combination, did not meet or equal any of the criteria contained in
20 the Commissioner's Listing of Impairments, 20 C.F.R. Section 404,
21 Subpart P, Appendix 1.  (AR at 16). The ALJ determined that plaintiff
22 was unable to perform his past relevant work, but retained the
23 residual functional capacity to perform "work activity at the medium
24 exertional level, with the following nonexertional limitations: never
25 balancing, or climbing ladders, ropes or scaffolds except in an
26 emergency; and avoiding all exposure to dangerous moving machinery,
27 electric shock, radiation, unprotected heights, power tools, or

28

1  operation of motor vehicles."  (AR at 16).  The ALJ also determined
2  that plaintiff's representations regarding the frequency of his
3  seizures were inconsistent and that his allegations of debilitating
4  and disabling functional limitations were "not fully credible."  (AR
5  at 19, 20).  Ultimately, the ALJ found that plaintiff was not disabled
6  pursuant to the Social Security Act.  (AR at 22).

7      On September 25, 2003, plaintiff filed a timely request with the
8  Appeals Council for review of the ALJ's decision.  (AR at 8).  The
9  Appeals Council subsequently affirmed the ALJ's decision.  (AR at 4-
10  6).

11

12                          **PLAINTIFF'S CLAIMS**

13      Plaintiff makes the following claims in the parties' Joint
14  Stipulation:

15      1.   The ALJ erred in rejecting or disregarding the medical
16  records and opinions which show that plaintiff is disabled.

17      2.   The ALJ improperly rejected plaintiff's credibility.

18      3.   The ALJ failed to contact plaintiff's treating sources to
19  determine his residual functional capacity.

20      4.   The ALJ failed to give a complete hypothetical to the
21  vocational expert.

22

23                          **STANDARD OF REVIEW**

24      Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision
25  to determine whether the ALJ's findings are supported by substantial
26  evidence and whether the proper legal standards were applied.  DeLorme
27  v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence
28

1 │ means "more than a mere scintilla" but less than a preponderance.
2 │ Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v.
3 │ Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.
4 │ 1988).

5 │ Substantial evidence is "such relevant evidence as a reasonable
6 │ mind might accept as adequate to support a conclusion." Richardson,
7 │ 402 U.S. at 401. This Court must review the record as a whole and
8 │ consider adverse as well as supporting evidence. Green v. Heckler,
9 │ 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible
10 │ to more than one rational interpretation, the ALJ's decision must be
11 │ upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

12 │

13 │                               **DISCUSSION**

14 │ **A.   THE ALJ'S ANALYSIS OF THE MEDICAL EVIDENCE**

15 │ In his first claim, plaintiff contends that the ALJ rejected or
16 │ disregarded the medical records and opinions that establish plaintiff
17 │ is disabled. First, plaintiff faults the ALJ for disregarding the
18 │ medical records that plaintiff contends show he has a listed
19 │ impairment.[1] Second, plaintiff alleges that the ALJ ignored competent

20 │ ─────────────

21 │     [1] Plaintiff refers to Listing 11.03, which states:

22 │     *Epilepsy - nonconvulsive epilepsy (petit mal,*
       *psychomotor, or focal)*, documented by detailed
23 │     description of a typical seizure pattern including all
       associated phenomena, occurring more frequently than
24 │     once weekly in spite of at least 3 months of prescribed
       treatment. With alteration of awareness or loss of
25 │     consciousness and transient postictal manifestations of
       unconventional behavior or significant interference
26 │     with activity during the day.

27 │     Plaintiff has indicated that he may qualify under Listing
28 │                                                    (continued...)

4

1  evidence in the record regarding plaintiff's degenerative spinal
2  changes, left ventricular enlargement, anemia, lowered white cell
3  count, elevated total protein, globulin, and total bilirubin, and
4  headaches.  As explained below, each of these claims lacks merit.

5      **1.  ALJ's Review of the Medical Records Regarding Plaintiff's**
6          **Seizure Disorder**

7      Plaintiff contends that the ALJ erred in failing to examine his
8  medical records, and that the records demonstrate that plaintiff is
9  disabled due to his seizures.  Moreover, plaintiff argues that he
10 meets a Listed Impairment.  Plaintiff points to his prescribed
11 medication, his complaints, and witness statements in the record that
12 allegedly support plaintiff's claim of disability.

13     The Commissioner's Listing of Impairments sets forth certain
14 impairments that are presumed to be of sufficient severity to prevent
15 the performance of work.  See 20 C.F.R. § 416.925(a).  If a claimant
16 has an impairment or combination of impairments medically equivalent
17 to one in the Listing of Impairments, disability is presumed and
18 benefits are awarded.  See 20 C.F.R. § 416.920(d).

19

20     [1](...continued)
21 11.02, which states,

22     *Epilepsy - convulsive epilepsy, (grand mal or*
       *psychomotor)*, documented by detailed description of a
23     typical seizure pattern, including all associated
       phenomena; occurring more frequently than once a month,
24     in spite of at least 3 months of prescribed treatment.
       With:
25
26     A.   Daytime episodes (loss of consciousness and convulsive
            seizures) or
27
28     B.   Nocturnal episodes manifesting residuals which
            interfere significantly with activity during the day.

5

1   A claimant has the burden of proving disability, including
2 disability based on the Listing of Impairments. See Roberts v.
3 Shalala, 66 F.3d 179, 182 (9th Cir.), cert. denied, 517 U.S. 1122
4 (1996). "For a claimant to show that his impairment matches a
5 listing, it must meet all of the specified medical criteria. An
6 impairment that manifests only some of those criteria, no matter how
7 severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530,
8 (1990). "For a claimant to qualify for benefits by showing that his
9 unlisted impairment, or combination of impairments, is 'equivalent' to
10 a listed impairment, he must present medical findings equal in
11 severity to all the criteria for the one most similar listed
12 impairment. . . . A claimant cannot qualify for benefits under the
13 'equivalence' step by showing that the overall functional impact of
14 his unlisted impairment or combination of impairments is as severe as
15 that of a listed impairment." Zebley 493 U.S. at 531.

16   Here, while plaintiff established that he has seizures, plaintiff
17 did not establish that the seizures met or equaled a Listed
18 Impairment. Plaintiff did not present evidence from any physician
19 that supported such a finding. Furthermore, none of the physicians
20 consulted by the Commissioner opined that plaintiff's impairment met
21 or equaled any Listing. And one State Agency physician opined that it
22 did not. (AR at 16, 151). While plaintiff currently takes Dilantin
23 for his seizure disorder, plaintiff's use of the medication does not
24 meet his burden of establishing that he is disabled. (AR at 78, 86-
25 87). In short, plaintiff's medical records present no evidence to
26 support plaintiff's claim that his impairment matches a Listed
27 Impairment.

28

1    Moreover, in order to qualify under Listing 11.02, plaintiff must
2  have a least one grand mal seizure per month.  (AR at 16).  Plaintiff
3  testified that he experienced grand mal seizures four to five times in
4  the past month.  (AR at 307-08).  But no medical evidence in the
5  record, including the reports he made to his physician, supports
6  plaintiff's claim that he had grand mal seizures.  To qualify under
7  Listing 11.03, plaintiff must have at least one petit mal seizure per
8  week.  (AR at 16).  While the record indicates that plaintiff
9  experienced petit mal seizures, plaintiff's reports of seizures were
10  inconsistent. For instance, in late July of 2001, plaintiff indicated
11  that he experienced petit mal seizures two to three times per month.
12  (AR at 89). Less than five months later in early December of 2001,
13  plaintiff indicated that he experienced petit mal seizures two to
14  three times per day.  (AR at 254).  The ALJ determined that
15  plaintiff's testimony was not persuasive based on his inconsistent
16  statements.  (AR at 16).  Where medical reports are inconclusive, the
17  ALJ is responsible for determining credibility and resolving conflicts
18  in testimony and ambiguities.  See Lewis v. Apfel, 236 F.3d 503, 509
19  (9th Cir. 2001).  In the instant case, the medical record was ambiguous
20  and plaintiff's reports regarding the frequency of his seizures
21  conflicted with each other. (AR at 70, 89, 98, 254, 260).  Thus, it
22  was the ALJ's duty to resolve the conflicts.  The ALJ did not err when
23  he rejected plaintiff's claim and found that plaintiff's impairments
24  did not meet or equal a Listed Impairment.
25  ///
26  ///
27  ///
28

7

1          2.   **ALJ's Review of the Medical Records Regarding**
2               **Other Severe Impairments**

3          Plaintiff also alleges that the ALJ disregarded evidence in his
4     medical records regarding degenerative spinal changes, cardiac
5     enlargement, anemia, lowered white cell count, elevated total protein,
6     globulin, and total bilirubin, and headaches.   While plaintiff's
7     medical records noted test results in some of these areas (AR at 171,
8     179, 182, 183, 184, 215, 222, 242, 243), none of the physician reports
9     indicated that plaintiff suffered from an impairment that could result
10    in a disabling condition.   Plaintiff, moreover, does not offer any
11    authority to show that any of the conditions he cited either singly or
12    in combination meet or equal any listing.   "The mere existence of an
13    impairment is insufficient proof of disability. 'A claimant bears the
14    burden of proving that an impairment is disabling.'"   Matthews v.
15    Shalala, 10 F.3d 678, 680 (9th Cir. 1993)(quoting Miller v. Heckler,
16    770 F.2d 845, 849 (9th Cir. 1985)(internal cite omitted).   In the
17    instant case, plaintiff has not established that his degenerative
18    spinal changes, cardiac enlargement, anemia, lowered white cell count,
19    elevated total protein, globulin, total bilirubin, and headaches are
20    disabling impairments.   As such, the ALJ properly disregarded the
21    impairments for purposes of determining whether plaintiff was
22    disabled.

23         In short, the ALJ determined that plaintiff's seizure disorder
24    and hypertension, while severe, were not disabling. While plaintiff's
25    medical records indicated that he suffered from other medical
26    conditions, neither the records nor the physician reports indicated
27    that plaintiff suffered from any disabling impairments.

28

                                    8

1    **B.    PLAINTIFF'S CREDIBILITY**

2         Plaintiff objects to the ALJ's determination that plaintiff
3    lacked credibility. (AR at 9).  Whenever an ALJ's disbelief of a
4    claimant's testimony is a critical factor in a decision to deny
5    benefits, as it is here, the ALJ must make explicit credibility
6    findings, supported by "specific, cogent reasons for the disbelief."
7    Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  An ALJ's
8    reasons for discrediting a claimant's testimony must be sufficiently
9    specific for the reviewing court to assess whether the decision was
10   impermissibly arbitrary.   Bunnell v. Sullivan, 947 F.2d 341, 345-46
11   (9th Cir. 1991).

12        **1.   Inconsistent Statements**

13        Internal conflicts in a claimant's statements or testimony
14   support a finding that the claimant lacks credibility.  See Light v.
15   Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) (in
16   weighing claimant's credibility, ALJ may consider "inconsistencies
17   either in [plaintiff's] testimony or between his testimony and his
18   conduct"); see also Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir.
19   1989) (ALJ can reject pain testimony based on contradictions in
20   plaintiff's testimony).

21        In this case, the ALJ cited inconsistencies in plaintiff's
22   testimony and statements as the basis for rejecting plaintiff's
23   credibility.   Namely, the ALJ observed that plaintiff made "wildly
24   inconsistent" statements regarding the frequency of his seizures.  (AR
25   at 19).  On June 15, 2001, plaintiff reported to an interviewer from
26   the Social Security Administration that he experienced seizures on a
27   "daily" basis.  (AR at 70).  On July 26, 2001, plaintiff completed a

28

1  Seizure Questionnaire indicating that he experienced seizures "2 to 3
2  times a month."   (AR at 89).   On November 30, 2001, plaintiff's
3  Reconsideration Disability Report listed the frequency of his seizures
4  as "4 times a week."   (AR at 98).   On December 3, 2001, plaintiff
5  completed a Request for Reconsideration form in which he listed
6  seizures occurring "2 to 3 times a day." (AR at 254).  On December 27,
7  2001, a Seizure Questionnaire filled out by the plaintiff listed
8  seizures occurring "6 to 7 times" and listed his last four seizures as
9  occurring between December 2, 2001 to December 23, 2001.  (AR at 86).
10 Finally, on a Request for Hearing by Administrative Law Judge form
11 dated February 6, 2002, plaintiff wrote that he experienced seizures
12 "everyday."   (AR at 260).   These statements of frequency varied
13 significantly and reasonably caused the ALJ to question the truth of
14 plaintiff's claims.   Accordingly, substantial evidence exists to
15 support the ALJ's determination to reject plaintiff's credibility.

16 **2.  Plaintiff's Lack of Injuries**

17      The ALJ rejected plaintiff's credibility based on the absence of
18 any medical records or injuries sustained as a result of the seizures
19 from 1984 until May 21, 2001, when plaintiff was treated for injuries
20 from a car accident.   (AR at 19).    The ALJ reasoned that if
21 plaintiff, in fact, experienced the high frequency of seizures that he
22 alleges, plaintiff would likely have been admitted to the hospital,
23 sustained injuries from falls, sustained injuries as a result of the
24 seizure activity, or had his driver's license suspended by the
25 Department of Motor Vehicles, much earlier than May 21, 2001.  (Id.).
26 The ALJ rejected plaintiff's credibility, in part, based on the
27 absence of these factors from the record.

28

10

1   Plaintiff indicated that he experienced petit mal seizures
2   anywhere from two to three times per day to two to three times per
3   month.   (AR at 254, 89).   According to plaintiff, the seizures
4   involved "staring off in space."   (AR at 272).   Plaintiff's former
5   fiancé witnessed a seizure and reported that when plaintiff
6   experienced seizures, he stood with a blank stare and sometimes lost
7   control of things in his hands. (AR at 104).   She reported that the
8   seizures lasted approximately two minutes and plaintiff required an
9   additional five minutes before he regained his pre-seizure awareness
10  and behavior. (Id.).   Plaintiff testified that the seizures occurred
11  at work, on his way to work, and on his way home from work.   (AR at
12  276).   Plaintiff testified that he drove his car to work or his father
13  would give him a ride.   (Id.).   For four or five months, plaintiff
14  testified that he held a full time position of transporting auto parts
15  in an automobile.   (AR at 281).   He testified that he experienced
16  seizures two to three times per week while employed in the position,
17  but never had a motor vehicle accident.   (AR at 282-83).

18       Given the reported frequency and two minute length of time that
19  plaintiff's seizures lasted, the ALJ noted a seventeen year absence of
20  seizure-related accidents and injuries in plaintiff's medical record
21  was unrealistic.   (AR at 19).   The absence of such injuries, according
22  to the ALJ,   reflected poorly on plaintiff's credibility.   (Id.).
23  Where medical reports are inconclusive or in conflict, questions of
24  credibility and resolutions of conflicts in the testimony are
25  functions solely of the Secretary.   See Morgan v. Commissioner of
26  Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Yuckert v.
27  Bowen, 841 F.2d 303, 307 (9th Cir. 1988).   Here, the ALJ provided

28

11

1   clear and convincing reasons for rejecting plaintiff's testimony,
2   namely the improbability that plaintiff drove a car for seventeen
3   years without experiencing a seizure while driving and without
4   suffering any other seizure-related injuries. (AR at 19). Thus, the
5   ALJ did not commit error in determining that plaintiff's reported
6   frequency of seizures was not credible.

7       **3. Criminal Convictions**

8       The ALJ relied, in part, on plaintiff's prior criminal record in
9   assessing plaintiff's credibility.  Plaintiff testified that he was
10  convicted of misdemeanor assault and battery in 2000 and was
11  incarcerated for one month. (AR at 296).  Additionally, plaintiff
12  testified that he received a federal conviction for forgery in 1996,
13  for which he was sentenced to probation. (AR at 296-97).  Plaintiff
14  objects to the ALJ's determination that these criminal convictions
15  reflected poorly on plaintiff's character for truth and veracity. (AR
16  at 20).

17      The Ninth Circuit has held that ALJs may consider "relevant
18  character evidence" when assessing the credibility of a claimant.
19  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  A claimant's
20  criminal convictions may be considered as character evidence.  Thus,
21  the ALJ did not commit error by considering plaintiff's past criminal
22  conviction when assessing his credibility.

23      In sum, the ALJ's determination that plaintiff was not credible
24  was based on clear and convincing reasons regarding plaintiff's
25  inconsistent statements, lack of seizure related injuries, and his
26  prior criminal conviction for forgery.

27  ///

28

1    C.    **FAILURE TO RECONTACT THE TREATING PHYSICIAN**

2         Plaintiff contends that the ALJ should have recontacted Dr.
3    Humberto S. Aragon, plaintiff's treating physician, to determine his
4    residual functional capacity. Plaintiff faults the ALJ for relying on
5    the opinions of a consultative examiner regarding plaintiff's
6    impairments rather than recontacting Dr. Aragon. As discussed below,
7    this claim lacks merit.

8         Under the Social Security Regulations, an ALJ must contact a
9    claimant's treating medical sources to obtain relevant medical
10   evidence. 20 C.F.R. § 416.912(e). If the ALJ receives insufficient
11   evidence from the claimant's treating sources, the ALJ must attempt to
12   recontact those sources. 20 C.F.R. § 416.912(e)(1) ("We will first
13   recontact your treating physician or psychologist or other medical
14   source to determine whether the additional information we need is
15   readily available."). The lack of a medical opinion from plaintiff's
16   medical sources as to what the claimant can do, however, will not
17   render the medical report incomplete. 20 C.F.R. § 416.913(b)(6). See
18   also 20 C.F.R. § 416.927.

19        An ALJ may obtain the opinion of a consultative examiner if the
20   ALJ determines that "information [he] need[s] is not readily available
21   from the records of [the claimant's] medical treatment source, or [he
22   is] unable to seek clarification from [the claimant's] medical
23   source." 20 C.F.R. 416.912(f). The report of a consultative
24   physician that the Commissioner requested may serve as substantial
25   evidence in support of a disability determination. Magallanes v.
26   Bowen, 881 F.2d 747, 752 (9th Cir. 1989); see also Stumpe v. Shalala,
27   1995 WL 7853, at *3 (N.D. Cal. Jan. 3, 1995) ("Since [the examining
28

                                        13

1  physician's] opinion was consistent with the medical evidence of
2  record, it constituted substantial evidence supporting the ALJ's
3  decision.").

4        Here, the ALJ had no duty to recontact plaintiff's treating
5  physician and properly sought the consultative examiner's opinion.
6  First, the ALJ duly obtained and reviewed the medical records of
7  plaintiff from his treating physician, Dr. Aragon. (AR at 14). There
8  is no evidence that Dr. Aragon's records were insufficient or
9  incomplete. The Commissioner sought the opinion Dr. Robert A. Moore,
10 a consultative examiner, to supplement the medical records provided by
11 Dr. Aragon, which offered no opinion as to the plaintiff's disabled
12 status or his functioning capacity. (AR at 138-41, 156-204, 214-19).
13 As discussed above, an ALJ may rely upon the opinion of a consultative
14 examining physician, such as Dr. Moore. (See supra). Dr. Moore's
15 recommendations, moreover, were consistent with the findings of two
16 State Agency physicians, Dr. Leonard H. Naiman and Dr. John R. Ford.
17 Dr. Moore opined that plaintiff's seizures prevented him from
18 climbing, balancing, working at heights, working around moving
19 machinery, operating a motor vehicle, or using power tools, but that
20 plaintiff had no restrictions in his ability to stand, sit, walk,
21 bend, stoop, lift, or carry. (AR at 140). Dr. Naiman opined that
22 plaintiff could engage in work activities, limited only by seizure
23 precautions, such has heights and machinery. (AR at 151). Dr. Ford
24 opined that plaintiff had no exertional, postural, manipulative,
25 visual, or communicative limitations and recommended that plaintiff
26 avoid unprotected heights, dangerous machines, driving, and other
27 hazzards. (AR at 205-12). The opinions of Drs. Moore, Naiman, and
28

14

1 | Ford are in agreement and constitute substantial evidence in support
2 | of the ALJ's decision. As such, plaintiff's claim that the ALJ should
3 | have recontacted the treating physician lacks merit.

4 | In short, the ALJ committed no error in either failing to
5 | recontact plaintiff's treating physician or in obtaining the
6 | consultative examiner's opinion or in subsequently relying on that
7 | opinion. Accordingly, plaintiff's claim must fail.

8 |

9 | **D.   FAILURE TO GIVE A COMPLETE HYPOTHETICAL TO THE VOCATIONAL EXPERT**

10 | Plaintiff claims that the ALJ erred in relying on the vocational
11 | expert's testimony because the ALJ failed to give the vocational
12 | expert a complete hypothetical.  Specifically, plaintiff faults the
13 | ALJ for failing to ask the vocational expert about plaintiff's
14 | restrictions in the areas of seizures, hypertension, and back pain.
15 | Plaintiff contends that the ALJ erred in neglecting to include these
16 | limitations in the hypothetical that he presented to the vocational
17 | expert.

18 | At the hearing, the ALJ posed the following hypothetical to the
19 | vocational expert:

20 | I'd ask you to assume an individual of the same
21 | age, education and work history as the Claimant,
22 | able to lift and carry 25 pounds frequently and 50
23 | pounds occasionally, able to sit, stand and walk
24 | at least six hours in an eight hour day, never
25 | climbing ladders, ropes or scaffolds except in an
26 | emergency, never balancing except in an emergency,
27 | frequently climbing ramps and stairs, no

28 |

15

1         limitations on stooping or crouching, avoiding all
2         exposure to dangerous, moving machinery, electric
3         shock, radiation, unprotected heights, power tools
4         and moving machinery, electric shock, radiation,
5         unprotected heights, power tools and operation of
6         motor vehicles.... Assuming all these limitations,
7         could the claimant return to any of his past work
8         as he actually performed it?

9  (AR at 318). The vocational expert responded that such a hypothetical
10 individual could perform plaintiff's past work as a security guard,
11 both as actually performed or generally performed in the national
12 economy. (AR at 319). Ultimately, the ALJ relied on this testimony
13 in finding that plaintiff had the residual functional capacity to work
14 as a security guard. (AR at 17). Plaintiff challenges the ALJ's
15 reliance on the vocational expert's testimony, arguing that the ALJ
16 failed to include in the hypothetical plaintiff's deficiencies in the
17 areas of seizures, hypertension, and back pain. Accordingly,
18 plaintiff concluded that the ALJ's failure to complete the
19 hypothetical renders the ALJ's subsequent reliance on the vocational
20 expert's testimony untenable. As discussed below, the Court
21 disagrees.

22        In order for a vocational expert's testimony to constitute
23 substantial evidence, the hypothetical question posed must "consider
24 all of the claimant's limitations." Andrews, 53 F.3d at 1044. While
25 the ALJ need not include every alleged impairment in his hypothetical,
26 he must make specific findings explaining his rationale for
27 disbelieving any subjective complaints that are not included.

28

1 | Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Gallant v.
2 | Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

3 |     Here, the ALJ's hypothetical accurately reflected the limitations
4 | that he assessed on plaintiff's ability to work based on the medical
5 | record.  In formulating the hypothetical, the ALJ appears to have
6 | relied on the opinions of Drs. Moore, Naiman, and Ford with respect to
7 | plaintiff's exertional limitations.  (AR at 16).  In his evaluation of
8 | plaintiff, Dr. Moore, a consultative examiner, opined that plaintiff's
9 | seizures prevented him from climbing, balancing, working at heights,
10 | working around moving machinery, operating a motor vehicle, or using
11 | power tools.  (AR at 140).  Dr. Moore also determined that plaintiff
12 | had no restrictions in his ability to stand, sit, walk, bend, stoop,
13 | lift, or carry.  Id.  Second, the ALJ relied on the assessment of Dr.
14 | Naiman, a State Agency medical consultant, who opined that plaintiff
15 | "should be capable of work activities that are only limited by seizure
16 | precautions, ie [sic] no work at heights or around machinery, due to
17 | his seizure [disorder]."  (AR at 151).  Dr. Naiman also determined
18 | that the severity of plaintiff's alleged impairments do not support a
19 | finding of disability based on the listing.  Id.  Finally, the ALJ
20 | relied on the assessment of Dr. Ford, a State Agency medical
21 | consultant, who opined that plaintiff had no exertional, postural,
22 | manipulative, visual, or communicative limitations.  (AR at 205-12).
23 | Dr. Ford recommended that plaintiff avoid unprotected heights,
24 | dangerous machines, driving, and other hazzards.  Id.

25 |     The opinions of all three physicians acknowledge plaintiff's
26 | seizure disorder and hypertension.  Dr. Moore acknowledged both
27 | plaintiff's seizure disorder and hypertension, which he incorporated
28 |

1  into his assessment of plaintiff's limitations.  (AR at 138, 140).
2  The evaluations of Dr. Naiman and Dr. Ford acknowledged plaintiff's
3  seizure disorder.  (AR at 147, 209).  Furthermore, the reports of Dr.
4  Naiman and Dr. Ford indicated that both physicians reviewed all the
5  medical records in plaintiff's file, which contained information that
6  plaintiff suffered from hypertension and that he was receiving
7  medication for his hypertension.  (AR at 147, 209).  There is no
8  indication that the physicians did not take the hypertension into
9  account when opining on plaintiff's limitations.  Because the ALJ
10 relied on the limitations outlined by all physicians when formulating
11 his hypothetical, the hypothetical that the ALJ posed to the
12 vocational expert encompassed plaintiff's seizure disorder and
13 hypertension.

14        Plaintiff also contends that the ALJ failed to include
15 plaintiff's back pain in the hypothetical given to the vocational
16 expert.    As noted above, the ALJ is required to make specific
17 findings explaining his rationale for disbelieving and excluding this
18 subjective complaint.  In his decision, the ALJ found no objective
19 evidence to support the alleged back pain or any longitudinal history
20 of complaints or treatment. (AR at 16).  These proffered reasons are
21 sufficiently specific to support his exclusion of back pain from the
22 hypothetical posed to the vocational expert.  Thus, the ALJ did not
23 err in limiting the hypothetical posed to the vocational expert to the
24 limitations outlined in the assessments of the consultative and state
25 agency physicians.  Accordingly, the Court must reject plaintiff's
26 claim.

27

28

1

**ORDER**

2     After careful consideration of all documents filed in this

3 matter, this Court finds that the decision of the Commissioner is

4 supported by substantial evidence and the Commissioner applied the

5 proper legal standards.  The Court, therefore, AFFIRMS the decision of

6 the Commissioner of Social Security Administration.

7

8     **LET JUDGMENT BE ENTERED ACCORDINGLY**

9

DATED: July 20, 2005

10

11

_____

JENNIFER T. LUM

12

UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28